SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Joseph S. Macchia (A-49-21) (086334)**

**Argued November 29, 2022 -- Decided March 16, 2023**

**WAINER APTER, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a unanimous verdict rejecting self-defense was sufficient to sustain defendant Joseph Macchia's conviction for reckless manslaughter, or whether the jury was also required to unanimously agree as to why it rejected Macchia's claim of self-defense.

In the early morning hours of May 13, 2016, defendant, an off-duty police officer wearing his service revolver in an off-duty holster, became involved in a physical fight with Michael Gaffney outside a bar in Union. The two exchanged blows and separated twice. According to witnesses, Gaffney then went inside the bar, but defendant stayed outside and stared at Gaffney to entice him to come back out. Gaffney did so, and they began to fight a third time. Defendant fell to the ground, and Gaffney got on top of him, punching him repeatedly. Witnesses heard defendant's gun fire as they tried to pull Gaffney off defendant. Union police arrived and arrested defendant, who stated that Gaffney was "going for his gun." In a recorded statement, defendant said that when Gaffney was "straddling" and "pummeling" him, defendant believed Gaffney's hand went to his gun. Defendant stated that he feared for his life and he "had no choice but to fire to stop the threat." At trial, defendant testified on his own behalf, consistent with his recorded statement.

In its summation, the State maintained that it had proven, beyond a reasonable doubt, that defendant did not act in self-defense by showing "that Officer Macchia has provoked this encounter with the intent to either kill or do serious bodily harm." The State noted it would "concede" that defendant had "an honest belief" that "his life [was] in jeopardy and he felt he had to act to protect himself." It briefly stated that "if [defendant] did not provoke the encounter, he could have retreated in safety," and "Officer Macchia could have left in complete safety between the final encounter and the second encounter." But the State's principal focus during closing was on how it disproved self-defense by showing defendant provoked the final encounter with Gaffney with the intent to kill or seriously injure.

1

After a charge conference, the judge charged the jury on self-defense, consistent with the model charge. The court instructed, in part, that "the State must prove that self-defense does not apply here . . . beyond a reasonable doubt" by making one of three showings: "1) the defendant's belief that the use of deadly force was necessary to save his own life or to avoid serious bodily harm was not honest and reasonable; or 2) although the defendant's belief was honest and reasonable, the defendant provoked the encounter with the purpose to kill or cause serious bodily harm; or 3) although the defendant's belief was honest and reasonable and the defendant did not provoke the encounter with the purpose to kill or cause serious bodily harm, the defendant could have retreated in complete safety."

After the jury deliberated for a short time, they asked the court: (1) "Do all three questions have to be yes for self-defense or one of the three to be self-defense?"; and (2) "Does the 'encounter' begin when Gaffney came out of the bar or when Joseph Macchia was on the ground?" The judge conferred with counsel, formulating an answer that the parties supported to each question. The Court reviews the judge's instructions, as well as clarification the judge later provided regarding potentially different time periods that could apply to the three bases for rejecting self-defense. Both parties agreed with the clarification.

On the next deliberation day, the court provided the jury with a new, revised instruction on self-defense, intended to replace the initial charge and to synthesize the clarifications already provided. Shortly thereafter, the jury sent out another note: "Jury cannot come to unanimous decision on" the self-defense question. With the consent of both parties, the court instructed the jury to continue deliberating.

After further deliberation, the jury submitted another note requesting clarification on self-defense. The Court reviews the clarification sought and the explanatory instruction the trial court provided with consent of counsel. Two days later, the jury found the State disproved self-defense beyond a reasonable doubt and defendant was guilty of second-degree reckless manslaughter. The Appellate Division affirmed, and the Court granted certification limited to the issue of whether the verdict unanimously rejecting self-defense sufficed, or whether the jury was required to "unanimously agree to one or more of the three bases for rejecting self-defense." 250 N.J. 548 (2022).

**HELD:** The trial court properly instructed the jury on the State's burden in disproving self-defense and no specific unanimity charge was required.

1. Self-defense is a complete defense to homicide. Once evidence of self-defense is introduced, the burden shifts to the State to disprove self-defense beyond a reasonable doubt. The Federal and State Constitutions require a unanimous verdict in criminal cases. However, although criminal convictions must rest upon a jury

2

determination that the defendant is guilty of <u>every element</u> of the crime with which he is charged, beyond a reasonable doubt, the jury need not unanimously agree on which of several possible sets of underlying brute facts make up a particular element, or which of several possible means the defendant used to commit an element of the crime. In other words, when a single crime can be committed in various ways, jurors need not agree upon the mode of commission. Unanimity is not required when a statute embodies a single offense that may be committed in a number of cognate ways. Contrary to the arguments of defendant and amici, even if all "conduct," "attendant circumstances," and "result[s] of conduct" are defined as material elements for purposes of the criminal code in N.J.S.A. 2C:1-14(h) and (i), that does not mean a jury must unanimously agree on all "conduct," "attendant circumstances," and "result[s] of such conduct" in order to constitutionally convict defendant of a crime. (pp. 22-26)

2. There are two crucial distinctions between an element of an offense for juror-unanimity purposes and the disjunctive means by which the State can disprove an affirmative defense such as self-defense. First, whereas the State must prove every essential element of the crime, it need only disprove a single factor or triggering circumstance to overcome a claim of self-defense. Second, it is generally the defendant, not the State, who controls the shape and direction of a self-defense claim. Because the State is in an inferior tactical position in trying to disprove a defense, it would be unreasonable to require the State to present for the jury's unanimous agreement a definitive set of facts, neatly synthesized in a unified theory, designed to explain why the defendant's conduct was not justified. Every court to have considered the question has held that a jury need not unanimously agree on the underlying basis for rejecting self-defense; it need only unanimously agree that the prosecution disproved self-defense beyond a reasonable doubt. (pp. 27-29)

3. Further, a general instruction on the requirement of unanimity ordinarily suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict. Under the Court's precedent, a specific unanimity instruction may be required when, for example: (1) a criminal offense can be proven by different theories, based on different acts, relying on different evidence; (2) the facts are exceptionally complex; (3) the allegations in a single count are either contradictory or only marginally related to one another; (4) there is a variance between the indictment and the proof at trial; or (5) there is strong evidence of jury confusion or danger of a fragmented verdict. (pp. 29-30)

4. Reviewing relevant case law, the Court notes that this case is not like prior cases in which it, or the United States Supreme Court, have held that a specific unanimity charge was required. Here, for example, the State did not rely on contradictory theories and did not try to prove that defendant committed the crime by presenting different theories based on different acts or different evidence. The prosecutor

3

mainly argued during summation that the State had disproved the provocation prong -- the second means of disproving self-defense -- by arguing that defendant provoked Gaffney from the bar into the last fight with the intent to harm or kill Gaffney. And the State presented only one theory to support the charge of reckless manslaughter -- defendant and Gaffney engaged in a fist fight, which ended in defendant shooting and killing Gaffney. The Court disagrees with defendant's contention that the jury's questions showed tangible indication of jury confusion, or a fragmented verdict. After the trial court answered the jury's questions and accurately explained the law, there was no tangible indication that the jury was confused about what facts it needed to decide to determine guilt. (pp. 30-35)

**AFFIRMED.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON and PIERRE-LOUIS; and JUDGE SABATINO (temporarily assigned) join in JUSTICE WAINER APTER's opinion. JUSTICES SOLOMON and FASCIALE did not participate.**

4

SUPREME COURT OF NEW JERSEY

A-49 September Term 2021

086334

State of New Jersey,

Plaintiff-Respondent,

v.

Joseph S. Macchia,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| November 29, 2022 | March 16, 2023 |

John Vincent Saykanic argued the cause for appellant
(John Vincent Saykanic, on the briefs).

Michele C. Buckley, Assistant Prosecutor, argued the
cause for respondent (William A. Daniel, Union County
Prosecutor, attorney; Michele C. Buckley, of counsel and
on the briefs).

Laura B. Lasota, Assistant Deputy Public Defender,
argued the cause for amicus curiae Public Defender of
New Jersey (Joseph E. Krakora, Public Defender,
attorney; Laura B. Lasota, of counsel and on the brief).

Rachel E. Simon argued the cause for amicus curiae
Association of Criminal Defense Lawyers of New Jersey
(Pashman Stein Walder Hayden, attorneys; Rachel E.
Simon, of counsel and on the brief).

Steven A. Yomtov, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Steven A. Yomtov, of counsel and on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

This case requires us to consider whether a unanimous verdict rejecting self-defense was sufficient to sustain defendant Joseph Macchia's conviction for reckless manslaughter, or whether the jury was also required to unanimously agree as to why it rejected Macchia's claim of self-defense.

Defendant, an off-duty police officer, fatally shot Michael Gaffney outside a bar during a fight. At trial, defendant testified that he acted in self-defense, shooting Gaffney because he believed Gaffney was reaching for his service weapon. The State therefore had the burden to prove that defendant did not justifiably use lethal force in self-defense by showing: (1) defendant's belief "that such force [was] necessary to protect himself against death or serious bodily harm" was not reasonable; (2) defendant "provoked the use of force against himself in the same encounter" "with the purpose of causing death or serious bodily harm"; or (3) defendant knew that he could retreat in "complete safety." N.J.S.A. 2C:3-4(b)(2).

The jury unanimously rejected defendant's claim of self-defense and unanimously found defendant guilty of second-degree reckless manslaughter.

2

Defendant contends that he is entitled to a new trial because the trial court failed to instruct the jury that it needed to agree unanimously on which one or more of the three reasons led it to reject his claim of self-defense. We hold that there was no error in the trial court's instruction. We therefore affirm defendant's conviction.

## I.

## A.

On May 12, 2016, defendant's spouse, Katherine Macchia, told him she was pregnant with their first child. They decided to celebrate at Paddy's Place, a bar in Union, New Jersey, where they were regulars. Defendant had been a police officer for fourteen years at the time. Before leaving for the bar, he changed into civilian clothes and secured his service weapon to his waist in an off-duty holster, covering it with an oversized T-shirt.[1] Defendant and Katherine Macchia arrived at the bar a little after 11:00 p.m. Michael Gaffney, with whom defendant was acquainted, had arrived at the bar with his friend Robert Lima at approximately 10:30 p.m.

---

[1] The parties stipulated that "Newark Police Department rules and regulations give off-duty police officers the option of being armed with their service weapons when they engage in activity that includes the consumption of alcoholic[] beverages."

3

The parties stipulated to several facts: (1) Gaffney was six-foot three and approximately 240 pounds; defendant was five-foot eight and approximately 190 pounds; (2) defendant drank six Miller Lite beers and two shots of Jack Daniel's whiskey at Paddy's Place; (3) at the time of Gaffney's death at 1:16 a.m. on May 13, 2016, defendant's blood alcohol concentration (BAC) was approximately .13% and Gaffney's was approximately .30%; (4) a toxicology report revealed that Gaffney had used cocaine.

Testimony at trial, along with video surveillance footage played for the jury,[2] established that shortly after 1:00 a.m., Gaffney and Lima were outside jostling each other over the cigarette Gaffney was smoking. Gaffney was apparently known for "play fighting," or what he called "Mikey love taps." Defendant was outside smoking a cigarette. When he saw Gaffney hit Lima, defendant asked Gaffney if he "liked to throw hands." According to Lima, Gaffney responded "sometimes," and Gaffney and defendant started "slap boxing" each other, "squar[ing] up" and hitting each other. Defendant "went down," and Gaffney ended the fight and went back inside the bar.

---

[2] Although video surveillance of the entire encounter was played for the jury at trial, counsel did not provide the surveillance footage either to the Appellate Division or to this Court. We rely here on transcripts of testimony of the witnesses at trial. When the witnesses disagree, we so indicate.

4

Defendant remained outside, visibly agitated. Lima testified that defendant "kept on saying 'I'm not done. He didn't get me. He didn't get me. He didn't knock me down. Nobody knocks me down.'" According to Lima, Gaffney came back outside and told defendant to "forget it. I'm done." However, the fight resumed.

Former Paddy's bartender Catherine Vinsko, bartender Nicolette Bedlivy, and Katherine Macchia came outside, and together with others attempted to separate defendant and Gaffney. Defendant and Gaffney ended up wrestling on the ground, and defendant grabbed Gaffney by the shirt, pulling Gaffney's shirt off him. Again, according to Lima, Gaffney told defendant "I'm done. I'm f***ing done . . . . I got you. It's over. I'm done."

Katherine Macchia testified that she shoved and yelled at her husband, attempting to get him to leave, but he ignored her. According to her testimony, Gaffney and defendant "ended up coming back together. Mr. Gaffney threw, I believe, two additional punches before they were completely separated." Vinsko testified that she told Gaffney to go back inside the bar, which he did. According to Lima, defendant remained outside and kept repeating, "I'm not done." Gaffney came back outside at the behest of Vinsko, and "told defendant it was 'over' and that he did not want to fight." Gaffney

5

and defendant then shook hands and "did a chest bump" in apparent reconciliation.

Gaffney went back inside the bar. According to Anthony Dimondi, another bar patron who testified at trial, defendant stayed outside, staring at Gaffney and trying to "entice him to come back out" by "[f]inger pointing and smiling." Dimondi testified that he tried to calm defendant down, telling him not to ruin his career over a fight, but defendant ignored him.

In response, Gaffney told defendant to stop "eyeballing" him, and then went back outside to confront defendant once again. The two started fighting. Defendant fell to the ground, and Gaffney got on top of him, punching him repeatedly. Vinsko testified that she and Lima "were trying to pull [Gaffney] up, he was finally coming up and [off defendant, and she] heard pop, pop, pop and . . . [she] just knew what happened." Lima also testified that he tried to pull Gaffney off defendant by "scoop[ing] him around his upper waist" and grabbing his arm; as Lima was pulling Gaffney off defendant, defendant fired his gun.

When Union police arrived, they arrested defendant. Defendant told the officers that he "almost passed out," that Gaffney "f***ed [him] up," and that Gaffney "went for [his] hip," and was "going for his gun."

6

Bedlivy told the officers that defendant and Gaffney had been fighting, that Gaffney "was beating the shit out of [defendant], and [Gaffney] tried to grab the gun." However, at trial, Bedlivy testified that she did not actually see Gaffney reach for defendant's gun, defendant's wife simply "told [her] that's what" happened. Katherine Macchia testified that Bedlivy told her Gaffney was reaching for defendant's gun, and "it was [her] perception" that Gaffney reached for defendant's gun, but she was "on the opposite side of [her] husband's weapon." Lima testified that he did not see Gaffney reach for defendant's gun. Police took defendant to the hospital where he was treated for a fractured nose, a head injury, a fractured wrist, and abrasions on his knees. An officer testified that, while at the hospital, defendant stated that he "feared for [his] life" during the fight.

A week after the shooting, defendant, accompanied by counsel, provided a recorded statement at the Union County Prosecutor's Office. During the interview, which was played for the jury at trial, defendant stated that the altercation began when Gaffney approached him and asked him if he "wanted to fight." Although defendant responded "no," because Gaffney was larger than him, Gaffney punched him in the chest and tackled him anyway. The "fight was broken up," and the two shook hands. Defendant was standing outside the bar, not trying to entice Gaffney but trying to get someone's

attention to help him retrieve his jacket and pay his tab, so he would not have to reenter the bar and reencounter Gaffney. Gaffney asked defendant if he was "eyeballing" him. Defendant said he was not, but the two started fighting again, and Gaffney knocked him to the ground. As Gaffney was "straddling" and "pummeling" him, defendant believed Gaffney's hand went to his gun. Defendant stated that he feared for his life and he "had no choice but to fire to stop the threat."

At trial, the medical examiner who performed Gaffney's autopsy testified that Gaffney sustained three gunshot wounds: one to the chest, one to the left shoulder, and one to the abdomen. Based on the stippling of gun powder residue, the doctor concluded that the gun was fired approximately seven to eight inches from Gaffney's skin. Gaffney also had numerous injuries to his face, right knee, and front right thigh, consistent with a "physical altercation."

Defendant testified on his own behalf. Consistent with his statement at the prosecutor's office, defendant stated that he did nothing to entice or encourage Gaffney to fight and that he never fought back as Gaffney punched him, even after Gaffney broke his nose. As Gaffney had him pinned to the ground, defendant's shirt rode up, exposing his gun. Defendant put his hand on the gun to "retain it in the holster" while Gaffney held him down with his

8

right hand and continued to punch him with his left. After Gaffney punched defendant several more times, defendant felt a "shift" of Gaffney's "right arm instead of being on [defendant's] torso going downward," "[t]owards [his] weapon." Defendant testified that his "whole life flashed before [his] eyes when this shift happened," and he drew his weapon and shot. During cross-examination, defendant admitted that he "couldn't see [Gaffney's] hands" and that Gaffney "never touched the gun when it was fired." When asked whether he felt Gaffney's hands on his gun, defendant stated that he "[could] not answer."

In its summation, the State asserted that the "fundamental" question came down to how a "garden variety fistfight" turned into a "gun fight"; in other words, "what is the provocation for this gun fight?" The State maintained that it had proven, beyond a reasonable doubt, that defendant did not act in self-defense because of what it called the "second component," provocation, by showing "that Officer Macchia has provoked this encounter with the intent to either kill or do serious bodily harm." The State noted it would "concede self-defense number one," that defendant had "an honest belief" that "his life [was] in jeopardy and he felt he had to act to protect himself." It briefly referenced what it called the third "component," stating that "if [defendant] did not provoke the encounter, he could have retreated in

9

safety," and "Officer Macchia could have left in complete safety between the final encounter and the second encounter." But the State's principal focus during closing was on how it disproved self-defense by showing defendant provoked the final encounter with Gaffney with the intent to kill or seriously injure. In total, the State mentioned the words provoke/provocation; discussed evidence that defendant provoked the final encounter with Gaffney; or argued that the State proved component two, provocation, twenty-two times during its closing argument.

B.

After a charge conference, the judge charged the jury on self-defense, consistent with the model charge:

> Self-defense is a complete defense to a charge of reckless manslaughter. The State has the burden to disprove the self-defense justification beyond a reasonable doubt.
>
> . . . .
>
> The law also provides that deadly force may not be used unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm.
>
> . . . .
>
> [D]eadly force is not justifiable in a situation where the actor with the purpose of causing death or serious bodily harm provoked the use of force against himself in the same encounter . . . . Nor is the use of deadly

10

force justifiable where the actor knows that he can avoid the necessity of using such force with complete safety by retreating.

To put it succinctly, if the defendant had an honest and reasonable belief that the use of deadly force was immediately necessary to save his own life, or to avoid serious bodily harm, he did not provoke the encounter with the purpose to kill or cause serious bodily harm, and he could not have safely retreated, then self-defense applies and the defendant is not guilty.

. . . .

Under the law, the State must prove that self-defense does not apply here. The State must do so beyond a reasonable doubt. Accordingly[,] the State must show that: 1) the defendant's belief that the use of deadly force was necessary to save his own life or to avoid serious bodily harm was not honest and reasonable; or 2) although the defendant's belief was honest and reasonable, the defendant provoked the encounter with the purpose to kill or cause serious bodily harm; or 3) although the defendant's belief was honest and reasonable and the defendant did not provoke the encounter with the purpose to kill or cause serious bodily harm, the defendant could have retreated in complete safety.

. . . .

If the State has proved any one of these three items beyond a reasonable doubt, then the defendant did not act in self-defense and you must go on to consider the crime of reckless manslaughter.

The judge also instructed the jury on how to approach the verdict sheet.

Question one required the jury to consider whether the State disproved self-

11

defense beyond a reasonable doubt.  "If your answer is no, then you have found the defendant not guilty due to self-defense . . . .  Your deliberations would stop."  Conversely, if the jury found that the State disproved self-defense beyond a reasonable doubt, it was to proceed to question two, whether defendant was guilty of reckless manslaughter.

Both parties consented to the charge.  The judge also charged the jury on unanimity, initially instructing, consistent with the model charge:  "[A]ll of you must agree if the defendant is guilty or not guilty on each charge.  That would apply to the issue of self-defense as well."  The judge then repeated and amplified the unanimity instruction:  "Your verdict, whatever it may be as to each crime charged, or the issue of self-defense, must be unanimous.  Each of the 12 members of the deliberating jury must agree as to the verdict."

After the jury deliberated for a short time, they submitted a question to the court:  "Can judge go over self-defense as stated on page 17?"  The judge asked the jury to clarify what exactly they wanted to "go over."  The jury responded:  (1) "Do all three questions have to be yes for self-defense or one of the three to be self-defense?"; and (2) "Does the 'encounter' begin when Gaffney came out of the bar or when Joseph Macchia was on the ground?"

The judge conferred with counsel, formulating an answer to each question that the parties supported.  On the first question, the judge explained:

12

"[T]he State must prove one or two or three beyond a reasonable doubt in order to disprove self-defense. Said differently, if the State proves one or two or three beyond a reasonable doubt, then there can be no self-defense."

Regarding the second question, the judge stated: "When the third encounter begins is for you to decide. However, it must be after the defendant and Mr. Gaffney reconciled."

At the end of that day, in response to a request from counsel[3] regarding potentially different time periods that could apply to the three bases for rejecting self-defense, the judge advised the jury as follows:

> With regard to Item N[umber] 1 which addresses the defendant's belief that the use of deadly force was necessary to save his own life or to avoid serious bodily harm being . . . honest and reasonable, you're to analyze that question as of the time the deadly force was used. However, you are free to consider all the facts and circumstances in evidence that led up to that moment in time in performing that analysis.
>
> With regard to number 2, the provocation issue, whether or not the defendant provoked the encounter with the purpose to kill or cause serious bodily harm. It will be up to you to determine when the encounter began, but it must be some time after the reconciliation that you've heard about in the testimony.
>
> With regard to item 3, which is the duty to retreat, the duty to retreat applies when the defendant resorts to the use of deadly force. So when you're considering the opportunity to retreat, it must be as of the time deadly

---

[3] The court did not specify which counsel raised this request.

13

force is used. So there's a little bit of a different time period depending upon which question you're looking to and I want to make sure there's no confusion that it is not all exactly the very same time period potentially.

Both parties again agreed with the judge's clarification.

On the next deliberation day, the court provided the jury with a new, revised instruction on self-defense, intended to replace the initial charge and to synthesize the clarifications already provided. The revised instruction, which both parties approved, tracked the language of the original instruction, except for the following:

> The State must prove that self-defense does not apply here. The State must do so beyond a reasonable doubt. Accordingly, the State must prove any one of the following beyond a reasonable doubt to show that self-defense does not apply here.
>
> 1. At the time defendant resorted to deadly force his belief that the use of deadly force was necessary to save his own life or to avoid serious bodily harm was not honest and reasonable, or
>
> 2. After the reconciliation between defendant and Mr. Gaffney, the defendant provoked the use of deadly force against himself in the encounter with the purpose to kill or cause serious bodily harm. It is for the jury to decide what the encounter was and when the encounter began after the reconciliation between defendant and Mr. Gaffney, or
>
> 3. At the time he resorted to deadly force the defendant could have retreated in complete safety.

14

Shortly thereafter, the jury sent out another note: "Jury cannot come to unanimous decision on question one of the verdict sheet." With the consent of both parties, the court instructed the jury to continue deliberating.

Early the next morning, defense counsel sent an email to the judge to "renew" his argument that "[t]he very fact that the jury cannot agree as to any of the three [self-defense] disqualifiers is, ipso facto an answer to that interrogatory that signifies that the State failed to disprove self-defense and that mandates an acquittal." The judge addressed the email on the record, noting that during discussions between the parties in chambers when the jury had indicated it was deadlocked, defense counsel had raised a "novel" argument: that all twelve jurors had to unanimously agree as to how the State disproved self-defense -- either because defendant's belief was not honest or reasonable, or because defendant provoked the use of deadly force, or because defendant could have retreated.

However, the court expressed surprise at receiving the email because the parties had been "discussing possible hypothetical" responses to possible "future questions" from the jury, and "after discussion it was decided that the consensus course of conduct, the agreed-upon course of conduct would be that the jury's inclination to cease deliberations was just simply premature." Defense counsel accepted the court's summary of the discussion and

acknowledged that because the jury had continued deliberating, "the issue is not ripe for argument. It may be later if the jury comes out and say they're hung." If that occurred, defense counsel said, he would request a specific unanimity charge.

After further deliberation, the jury submitted another note requesting clarification on self-defense: "Jury want more clarification on justification, self-defense, page 17 where self-defense does not apply here. Number one, number 2, and number 3 in plain English." With consent of counsel, the court provided the following explanatory instruction:

> 1 . . . . The State must prove beyond a reasonable doubt that defendant's expressed belief was not honest or that it was not reasonable. If the State proves this beyond a reasonable doubt, then there is no self-defense.
>
> 2. Another way self-defense could be disproven is by the State proving beyond a reasonable doubt that after defendant and Mr. Gaffney shook hands outside of Paddy's Place, defendant with the purpose to kill or cause serious bodily harm to Mr. Gaffney provoked the use of force against himself. If the State proves this beyond a reasonable doubt, then there can be no self-defense.
>
> [3.] Another way self-defense could be disproven is by the State proving beyond a reasonable doubt that at the time defendant used deadly force defendant could have retreated in complete safety. If the State proves this beyond a reasonable doubt, then there can be no self-defense.
>
> . . . .

16

> If the State has proved any one of these three items beyond a reasonable doubt, then the defendant did not act in self-defense and you must go on to consider the crime of reckless manslaughter.
>
> If the State does not satisfy its burden and you do have a reasonable doubt, then it must be resolved in favor of the defendant and you must acquit the defendant based upon self-defense.

Two days later, the jury found the State disproved self-defense beyond a reasonable doubt and defendant was guilty of second-degree reckless manslaughter in violation of N.J.S.A. 2C:11-4(b)(1). Defendant was sentenced to six years in prison with an eighty-five percent parole disqualifier under the No Early Release Act, N.J.S.A. 2C:43-7.2, and three years of parole supervision.

## C.

Defendant appealed. With respect to the issue now before the Court, the Appellate Division found no error in the unanimity and self-defense charges. "The State did not advance different theories based on different acts and different evidence," the Appellate Division noted, and "nothing in our jurisprudence suggests that the jury's findings need be unanimous on how the State disproves self-defense so long as the jury unanimously agrees that the State disproved self-defense beyond a reasonable doubt." As to jury

17

confusion, the Appellate Division was "satisfied that any initial confusion the jury may have had about the self-defense charge was remedied by the judge's answers to the jury's questions and the judge's supplemental instructions, which were sanctioned by both parties."

We granted defendant's petition for certification, limited to the issue of whether the verdict unanimously rejecting self-defense sufficed, or whether the jury was required to "unanimously agree to one or more of the three bases for rejecting self-defense." 250 N.J. 548 (2022). We also granted leave to the Attorney General, Public Defender, and Association of Criminal Defense Lawyers of New Jersey (ACDL) to appear as amici curiae.

II.

Defendant urges us to reverse the Appellate Division and remand for a new trial with a specific unanimity instruction and a special interrogatory form regarding which of the three bases the jury rejected for self-defense. Defendant argues that the trial court erred in "not instructing the jury that it needed to unanimously agree on the factors disproved by the State beyond a reasonable doubt (in spite of the defense request and obvious jury confusion)." Further, defendant contends, the trial court erred in failing to provide the jury with a special interrogatory form indicating which self-defense basis it had rejected, and this failure resulted in an unconstitutional "patchwork/

18

fragmented or less than unanimous verdict." Under <u>State v. Parker</u>, 124 N.J. 628, 639 (1991), defendant asserts, the State's proofs "were contradictory or only marginally related to each other," and there was "tangible indication of jury confusion."

The Public Defender echoes many of defendant's arguments and likens the different bases for rejecting self-defense to essential elements of a crime that the State must prove beyond a reasonable doubt. Relying on <u>Parker</u> and <u>State v. Frisby</u>, 174 N.J. 583 (2002), the Public Defender contends the bases for rejecting self-defense are conceptually distinct, requiring different findings based on different evidence, and without a specific unanimity instruction, there is a risk of a fragmented verdict. The ACDL emphasizes the distinction between "brute facts," which do not need to be unanimously agreed upon by the jury, and elements of an offense, which do. Relying on the definitions of "element" and "material element" in the criminal code, N.J.S.A. 2C:1-14(h) and (i), the ACDL maintains that each basis for rejecting self-defense constitutes a "material element" of the offense that must be unanimously decided by the jury. Amici urge the Court to adopt a new rule that specific unanimity instructions are required in all cases in which self-defense is raised to inform juries that they must unanimously agree as to which self-defense prong or basis they are rejecting in order to reach a guilty verdict.

19

The State responds that a specific unanimity instruction was not required under this Court's caselaw because there was no risk of a fragmented verdict, no exceptionally complex facts, and no jury confusion. The State distinguishes between "proof of liability where the State must present evidence to establish each element of the charged offense, and disproof of self-defense, where the State must apply its proof to factual circumstances presented by or highlighted by the defendant." The State maintains "a jury must only unanimously agree whether the State has disproved defendant's claim that his use of deadly force was justified, and not the means by which it was disproven." According to the State, failure to provide a specific unanimity instruction on self-defense was therefore not plain error. The Attorney General largely agrees with the State and emphasizes that there is no authority for defendant's proposed rule: The few jurisdictions to have addressed the issue have all concluded that the jury need be unanimous only in rejecting self-defense -- not in its reason(s) for doing so.

### III.

### A.

Defendant challenges the court's instructions to the jury on self-defense. "[P]roper jury instructions are essential to a fair trial," and "erroneous instructions on material points are presumed to" be prejudicial. State v.

20

McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)). However, a party may generally not "urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict." R. 1:7-2. In the absence of such objections, we review challenged jury instructions for plain error. An error is plain if it is "clearly capable of producing an unjust result," R. 2:10-2, in that there is "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." State v. Dunbrack, 245 N.J. 531, 544 (2021) (quoting State v. Funderburg, 225 N.J. 66, 79 (2016)).

The State urges us to apply plain error review. Conversely, defendant maintains that he properly objected to the jury instructions via counsel's early morning email purportedly renewing his arguments that all twelve jurors must be unanimous as to which condition of self-defense the State disproved beyond a reasonable doubt. The Appellate Division did not discuss which standard of review applied and found no error in the trial court's instruction. Because we agree with the Appellate Division that the trial court did not err, we need not determine whether defense counsel's email sufficed to avoid plain error review. Under either standard, we find the trial court properly instructed the jury.

21

B.

The New Jersey Legislature has provided that "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person." N.J.S.A. 2C:3-4(a). The Legislature has limited the use of deadly force in self-defense as follows:

> The use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm; nor is it justifiable if:
>
> (a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or
>
> (b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . .
>
> [Id. at (b)(2).]

Self-defense is a complete defense to homicide. See, e.g., State v. Kelly, 97 N.J. 178, 198 (1984). If "a self-defense charge is requested and supported by some evidence in the record, it must be given" at trial. State v. Rodriguez, 195 N.J. 165, 174 (2008). Additionally, once evidence of self-defense is introduced, the burden shifts to the State to disprove self-defense beyond a reasonable doubt. Specifically, the State must "prove beyond a reasonable

22

doubt that the self-defense claim does not accord with the facts; acquittal is required if there remains a reasonable doubt whether the defendant acted in self-defense." Kelly, 97 N.J. at 200.

Defendant challenges the court's self-defense instruction for failing to require the jury to reach unanimity on how the State disproved defendant's asserted justification of self-defense. The Sixth Amendment's right to a trial by jury, made applicable to the states by the Fourteenth Amendment's Due Process Clause, requires a unanimous verdict in criminal cases in both federal and state courts. Ramos v. Louisiana, ___ U.S. ___, 140 S. Ct. 1390, 1397 (2020). Article 1, Paragraph 9 of the New Jersey Constitution likewise requires the jury to be unanimous in criminal cases, as does Rule 1:8-9.

Unanimity generally "requires 'jurors to be in substantial agreement as to just what a defendant did' before determining his or her guilt or innocence." Frisby, 174 N.J. at 596 (quoting United States v. Gipson, 553 F.2d 453, 457 (5th Cir. 1977)). However, although criminal convictions must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt," State v. Bailey, 231 N.J. 474, 483 (2018) (quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)), the jury need not unanimously agree on "which of several possible sets of underlying brute facts make up a particular element," or "which of

23

several possible means the defendant used to commit an element of the crime,"

Richardson v. United States, 526 U.S. 813, 817 (1999). In other words, "when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." Schad v. Arizona, 501 U.S. 624, 649-50 (1991) (Scalia, J., concurring).

Defendant and the ACDL point to the definitions of "element" and "material element" in the criminal code. An

> "[e]lement of an offense" means (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as
>
>> (a) Is included in the description of the forbidden conduct in the definition of the offense;
>>
>> (b) Establishes the required kind of culpability; [or]
>>
>> (c) Negatives an excuse or justification for such conduct . . . .
>
> [N.J.S.A. 2C:1-14(h).]

A "'[m]aterial element of an offense' means an element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unconnected with . . . (2) the existence of a justification or excuse for such conduct." Id. at (i). Each basis for rejecting self-defense in N.J.S.A. 2C:3-4 therefore constitutes a separate "material element" of the

24

offense under N.J.S.A. 2C:1-14, defendant and amici maintain, and each therefore must be independently submitted to the jury for unanimous determination.

This argument proves too much. "[L]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes" for purposes of requiring juror unanimity. Schad, 501 U.S. at 636 (plurality opinion). As the United States Supreme Court has explained, "suppose a statute requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify." Mathis v. United States, 579 U.S. 500, 506 (2016). Because such a statute lists different means of satisfying a single element of a crime, or different ways of committing the crime, a jury need not be unanimous as to what kind of weapon defendant used. Ibid. Instead, "[a] jury could convict even if some jurors 'conclude[d] that the defendant used a knife' while others 'conclude[d] he used a gun,' so long as all agreed that the defendant used a 'deadly weapon.'" Ibid. (quoting Descamps v. United States, 570 U.S. 254, 270 (2013)).

Yet pursuant to N.J.S.A. 2C:1-14(h) and (i), using a knife, a gun, or a bat are different types of "conduct" that would be "included in the description of the forbidden conduct in the definition of the offense," and would

25

"[e]stablish[] the required kind of culpability."  They would therefore all fall into the statute's definition of a material element, and according to defendant and amici, juror unanimity as to whether defendant used a knife, a gun, or a bat would be required.

That is not the law.  As we have previously noted, "unanimity is not required when a statute embodies a single offense that may be committed in a number of cognate ways."  Frisby, 174 N.J. at 597.  For example, the jury need not unanimously agree on whether a defendant was a principal, accomplice, or co-conspirator in order to convict defendant of the underlying offense.  State v. Brown, 138 N.J. 481, 511 (1994); State v. Roach, 146 N.J. 208, 223 (1996).  And under the federal constitution, there is no constitutional problem with jury instructions that do not require unanimity as to whether defendant was guilty of premeditated murder or felony murder.  Schad, 501 U.S. at 627.

Thus, contrary to the arguments of defendant and amici, even if all "conduct," "attendant circumstances," and "result[s] of conduct" are defined as material elements for purposes of the criminal code in N.J.S.A. 2C:1-14(h) and (i), that does not mean a jury must unanimously agree on all "conduct," "attendant circumstances," and "result[s] of such conduct" in order to constitutionally convict defendant of a crime.

26

Defendant and amici's position that each of the ways in which the State can disprove self-defense are material elements that must be unanimously found by the jury overlooks two crucial distinctions between what the Supreme Court has generally referred to as an element of an offense for juror-unanimity purposes, and the disjunctive means by which the State can disprove an affirmative defense such as self-defense.

First, as the Connecticut Supreme Court has recognized, "whereas the State must prove every essential element of the crime, it need only disprove a single factor or triggering circumstance to overcome a claim of self-defense. In that sense, the state's burden with respect to a justification is the very opposite of its burden with respect to proving a crime." State v. Mekoshvili, 280 A.3d 388, 398 (Conn. 2022) (emphases added). The same is true under New Jersey law. All agree that to disprove self-defense, the State need not prove that defendant's belief was not honest and reasonable, and that defendant provoked the encounter, and that defendant could have retreated. Instead, if the State proves any of the disqualifiers beyond a reasonable doubt, it has disproven self-defense.

Second, it is generally the defendant, not the State, who "controls the shape and direction of a self-defense claim" and the State must "apply its proof to factual circumstances raised or illuminated by the defendant." State v.

27

<u>Bailey</u>, 551 A.2d 1206, 1213 (Conn. 1988).  Because the State is in an

"inferior tactical position" in trying to disprove a defense, it would be

unreasonable to require the State "to present for the jury's unanimous

agreement a definitive set of facts, neatly synthesized in a unified theory,

designed to explain why the defendant's conduct was not justified."  <u>Ibid.</u>[4]

Our holding that unanimity was not required as to why self-defense was

rejected in this case is consistent with the approach of every other court to

have considered the question.  All have held that a jury need not unanimously

---

[4] The criminal code sets forth other affirmative defenses that the State must disprove beyond a reasonable doubt, but that similarly can be disproven in multiple alternative ways.  As noted during oral argument, it is an affirmative defense to a crime that a person committed the act "because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist."  N.J.S.A. 2C:2-9(a).  Like self-defense, the Legislature has placed certain limitations on duress:

> The defense provided by this section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress.  The defense is also unavailable if he was criminally negligent in placing himself in such a situation, whenever criminal negligence suffices to establish culpability for the offense charged. . . .
>
> [<u>Id.</u> at (b).]

Pursuant to defendant and amici's position, would the jury have to unanimously agree on five or six separate underlying "elements" to conclude that the State disproved duress beyond a reasonable doubt, even if all jurors agreed that defendant's conduct was not justified by duress?

28

agree on the underlying basis for rejecting self-defense; it need only unanimously agree that the prosecution disproved self-defense beyond a reasonable doubt. See, e.g., Mekoshvili, 280 A.3d at 398 (holding due process requires only that the jury unanimously agree that the State disproved self-defense, even if they "disagree as to the specific reason why the crime was not . . . justified"); People v. Mosely, 488 P.3d 1074, 1076-81 (Colo. 2021) ("[T]he jury need not unanimously agree on the specific reason that self-defense was disproven, so long as it unanimously agrees that the prosecution disproved self-defense beyond a reasonable doubt."); Rodriguez v. State, 212 S.W.3d 819, 821 (Tex. Ct. App. 2006) ("[T]he jurors must unanimously agree that the defendant's conduct was not justified by self-defense. It is not necessary, however, that they unanimously agree as to why.").

## C.

Further, "[o]rdinarily, a general instruction on the requirement of unanimity suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict." Parker, 124 N.J. at 641.

Under this Court's precedent, a specific unanimity instruction may be required when, for example: (1) a criminal offense "can be proven by different theories," based on different acts, relying on different evidence; (2) the "facts

29

are exceptionally complex"; (3) "the allegations in a single count are either contradictory or only marginally related to one another"; (4) "there is a variance between the indictment and the proof at trial"; or (5) there is strong evidence of jury confusion or "danger of a fragmented verdict." Id. at 635-37 (quotations omitted). On appeal, in the main, "[t]he reviewing court should examine two factors: whether the acts alleged are conceptually similar or are 'contradictory or only marginally related to each other,' and whether there is a 'tangible indication of jury confusion.'" State v. Gandhi, 201 N.J. 161, 193 (2010) (quoting Parker, 124 N.J. at 639).

This case is not like prior cases in which we, or the United States Supreme Court, have held that a specific unanimity charge was required. In Richardson, the defendant was convicted of engaging in a "continuing criminal enterprise" contrary to 21 U.S.C. § 848(a), which required the jury to find a "series of violations of [the federal drug laws]." 526 U.S. at 815-16 (alteration in original). The judge charged the jurors that they "must unanimously agree that the defendant committed at least three federal narcotics offenses," but did not "have to agree as to the particular three or more federal narcotics offenses committed by the defendant." Id. at 816. The Supreme Court reversed, holding that to convict the defendant of a "continuing criminal enterprise," the jury was required to unanimously agree not only that defendant had committed

30

at least three federal narcotics offenses, but which three federal narcotics offenses he committed. Ibid. Here, the jury unanimously agreed that defendant committed the only offense in question -- reckless manslaughter. The jury also unanimously agreed that defendant's conduct was not justified by self-defense.

In Frisby, the Court reviewed a conviction for endangering the welfare of a child in violation of N.J.S.A. 2C:24-4(a). The statute required three elements. On the third element, the State advanced two contradictory theories at trial. See Frisby, 174 N.J. at 598. The first was that the defendant was in the motel room with her son when he died and either inflicted the injuries herself or failed to supervise him, resulting in death. Ibid. The second was that the defendant abandoned her son alone in the motel room for several hours, during which time he sustained injuries and died. Ibid. The trial court instructed the jury that to convict, the State could prove "either" of the contradictory theories. Ibid. The defendant asserted that "because the State proffered two entirely distinct factual scenarios . . . the jurors may have convicted her although some believed she was at the motel when the injuries were sustained while others believed she abandoned [her son] for a night on the town." Id. at 599. We agreed with the defendant. As we explained, the State advanced "[d]ifferent theories" on the third element, "based on different

31

acts and entirely different evidence. In one scenario, [the defendant] was present and inflicted the injuries on [her son] or allowed him to be injured. In the other, she went out and left him alone." Ibid. Because the State's two different theories were "'contradictory,' 'conceptually distinct,' and not even 'marginally related' to each other," we held, a "specific unanimity instruction" was required. Id. at 600.

We agree with the Appellate Division that unlike in Frisby, the State here did not rely on contradictory theories and "did not try to prove that defendant committed the crime by presenting different theories based on different acts or different evidence." As the Public Defender correctly acknowledges, "[t]he prosecutor mainly argued during summation that the State had disproved the provocation prong by arguing that defendant, through his words, actions, and bruised ego, provoked Gaffney from the bar into the last fight with the intent to harm or kill Gaffney after the men had reconciled."

In summation, the State asked, "What is the provocation for this gun fight?" It then set out what it believed the evidence proved at trial: "We have shown that Officer Macchia has provoked this encounter with the intent to either kill or do serious bodily harm"; "[T]he facts of this case do lay out that Officer Macchia provoked this"; "We ask you to pay particular attention to . . . the self-defense exceptions of two, provoking an encounter with the

purpose to kill or cause serious bodily harm"; "[T]he facts of the witnesses will establish that Officer Macchia provoked Michael Gaffney"; "Officer Macchia wants Michael Gaffney to come outside"; "[T]he provocation -- we believe these words are clear. These words establish provocation and so self-defense fails"; "Michael Gaffney is called out by Officer Macchia and intent to call him out was to do harm, serious bodily harm to Michael Gaffney"; "The final issue in this case . . . is what's on the mind of Officer Macchia when he re-engages Michael Gaffney at that doorway for the final encounter, his intent to cause him harm." This does not reflect divergent, contradictory facts or theories.

Finally, in State v. Gentry, the State presented evidence that during a theft, the defendant used force against a store employee, Tiffany Davis, and store manager, David Lowe. 183 N.J. 30, 31 (2005). During deliberations, the jury sent out a note, "indicating that all jurors agreed that 'defendant knowingly used force against' either Davis or Lowe, but one group of jurors believed defendant knowingly used force on Davis but not Lowe, and the other group believed defendant knowingly used force on Lowe but not Davis." Id. at 31-32. The note asked "whether that constituted 'a unanimous vote.'" Id. at 32. The judge responded that the jury could unanimously convict if all agreed that the defendant had used force against another, even if they disagreed as to

33

whom the defendant had used force against.  Ibid.  Over a dissent, the

Appellate Division affirmed, holding "the identity of the victim was

immaterial."  Ibid.  This Court disagreed, holding the dissenting judge was

correct that "the jurors had to agree unanimously on which acts were

committed against which victim."  Id. at 33.

Unlike in Gentry, the State in this case did not introduce evidence that

defendant committed different acts against different victims.  Instead, as the

Appellate Division correctly held, "[t]he State presented only one theory to

support the charge of reckless manslaughter -- defendant and Gaffney engaged

in a fist fight, which ended in defendant shooting and killing Gaffney."

We also disagree with defendant's contention that the jury's questions

showed "tangible indication of jury confusion," Gandhi, 201 N.J. at 193, or a

"patchwork/fragmented" verdict.  The jury was initially uncertain about

whether, to reject self-defense, it needed to find that the State proved beyond a

reasonable doubt that defendant's belief was not honest and reasonable, and

that defendant provoked the encounter, and that defendant could have retreated

to safety, or whether it could reject self-defense after finding that the State had

proven only one of those alternatives.  But the trial court answered -- correctly

-- that if the State "has proved any one of these three items beyond a

reasonable doubt, then the defendant did not act in self-defense and you must

34

go on to consider the crime of reckless manslaughter." After the trial court answered the jury's questions and accurately explained the law, there was no "tangible indication" that the jury was confused about what facts it needed to decide to determine guilt.

Accordingly, we hold the trial court properly instructed the jury on the State's burden in disproving self-defense and no specific unanimity charge was required.

## IV.

The judgment of the Appellate Division is affirmed and defendant's request for a new trial is denied.

CHIEF JUSTICE RABNER; JUSTICES PATTERSON and PIERRE-LOUIS; and JUDGE SABATINO (temporarily assigned) join in JUSTICE WAINER APTER's opinion. JUSTICES SOLOMON and FASCIALE did not participate.

35